IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

AYESHA WILLIAMS                                                    PLAINTIFF


vs.                              CASE NO. **3:06CV00123JMM**


MICHAEL J. ASTRUE,                                              DEFENDANT
Commissioner, Social Security Administration[1]


## ORDER


Plaintiff, Ayesha Williams, brings this action under 42 U.S.C. §405(g) and 1383(c)(3), for judicial review of a final decision of the Commissioner of the Social Security Administration denying her claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1382c. Both parties have submitted briefs, and the case is ready for disposition.


I.


Plaintiff filed an application for SSI benefits on October 15, 2002, alleging disability due to multiple impairments. (Tr. 415). Her claims were denied initially and upon reconsideration. Pursuant to Plaintiff's request, a hearing was conducted by the Administrative Law Judge (ALJ) on October 13, 2004, at which Plaintiff, who was represented by counsel, testified. (Tr. 966-987). On January 25, 2005, the ALJ issued

---

[1]Michael J. Astrue was sworn in as Commissioner of the Social Security on February 12, 2007. He, therefore, is substituted for Jo Anne B. Barnhart under Fed. R. Civ. P. 25(d)(1).

a decision partially granting Plaintiff's claim for benefits. (Tr. 20-26).    The ALJ found that

Plaintiff was disabled beginning June 1, 2004, when she was involved in a motor vehicle

accident, sustaining multiple injuries including a right leg injury which required above the

knee amputation  (Tr. 24).  The ALJ found that Plaintiff was not disabled from October 15,

2002 to June 1, 2004.  (Tr. 25) .  On May 12, 2006, the Appeals Council denied Plaintiff's

request for review.  (Tr. 12-14).  Therefore the ALJ's decision became the final decision

of the Commissioner from which Plaintiff seeks judicial review.


                                        II.

Plaintiff has the burden of proving her disability by establishing a physical or mental

impairment lasting at least one year that prevents her from engaging in any substantial

gainful activity.  42 U.S.C. §1382c(a)(3)(A); *Baker v. Apfel*, 159 F.3d 1140, 1143 (8th Cir.

1998); *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997).

The Court's function on review is to determine whether the Commissioner's findings

are supported by substantial evidence on the record as a whole.

> Substantial evidence is less than a preponderance, but is enough that a
> reasonable mind would find it adequate to support the Commissioner's
> conclusion. In determining whether existing evidence is substantial, we
> consider evidence that detracts from the Commissioner's decision as well as
> evidence that supports it. As long as substantial evidence in the record
> supports the Commissioner's decision, we may not reverse it because
> substantial evidence exists in the record that would have supported a
> contrary outcome,  or because we would have decided the case differently.

*Roberts v. Apfel,*   222 F.3d 466, 468 (8th Cir. 2000) (citations omitted).

In this case, the Court must determine whether the Commissioner's decision that

Plaintiff was not disabled from October 15, 2002 to June 1, 2004, is supported by

substantial evidence.

III.

Plaintiff was born on September 11, 1953 and was 51 years old at the time of the hearing. (Tr. 21, 415).  She has a tenth grade education.  (Tr. 968).  She has not worked since May 14, 1981 (Tr. 971).  She has no past relevant work.  (Tr. 23).

At the hearing, Plaintiff testified that she is depressed and has a panic disorder.  (Tr. 972).  She states that she has received treatment from Mid-South Health Systems since December, 2001, for major depression.  (Tr. 972).  She went to Mid-South about twice a month for counseling sessions.  (Tr. 973).  She takes medication for her depression and panic attacks.  (Tr. 974).

Plaintiff further testified that she had seizures or passed out about twice a year for the 3 or 4 years prior to the hearing.  (Tr. 975-76).  She complained of pain in her lower back and in her legs.  (Tr. 976).  She stated that she has "terrible" headaches about three or four times a week, which may last all day.  (Tr. 977).   She testified that prior to her June, 2004,  accident she stayed in bed most of the day every day because of her depression and pain.  (Tr. 982).

Plaintiff stated that before her accident she could not lift over 5 pounds, that she could stand or sit for about an hour, and walk about a block without stopping and resting.  (Tr. 983-985)    The medications she was taking made her tired.  (Tr. 984).

The medical records reveal that Plaintiff was treated at Mid-South Health Systems beginning around November, 2001, receiving both counseling and medication management.  At times, she went to the clinic every two weeks.  (See, e.g., Tr. 536-551; 557-596; 622-

653).  Some of treatment Plaintiff received at Mid-South was for court-ordered anger management sessions.  (Tr. 545).

Plaintiff has been treated by Revel D. Porter, M.D. at the Clopton Clinic.   Dr. Porter referred Plaintiff for a CT head scan in January, 2003, because of Plaintiff's complaints of headaches.  The head CT was essentially negative.  (Tr. 788).  A CT scan of the head conducted on February 11, 2004 found no evidence of seizure disorder. (Tr. 741).

Dr. Porter referred Plaintiff for a CT scan of both the lumbar and cervical spines because of Plaintiff's complaints of back and neck pain which had become worse after a boating accident in March, 2003. (Tr. 701-703).   The CT scans were done on April 30, 2003.  According to the CT scan of the lumbar spine, Plaintiff had chronic degenerative changes with stenosis that are not severe in the central canal; chronic osteophytosis and lateral herniation in the right neuroforamen at L5-S1; soft disc herniation in the lateral right neuroforamen at L4-L5 with no free fragment; and mild narrowing of the canal and narrowing of the lateral recesses at L4-L5 and L5-S-1.  (Tr. 695-696).

According to the CT scan of the cervical spine, Plaintiff had only minimal osteophytosis with no acute soft disc herniation detected.  (Tr. 698-699).


III.

The ALJ undertook the familiar five-step analysis in determining whether Plaintiff is disabled.  The five-step sequential evaluation determines:  (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether he or she has a severe and medically determinable physical or mental impairment; (3) whether the claimant may be deemed disabled because the impairment meets or equals a listed impairment in Appendix

1 to Subpart P, Title 20, Code of Federal Regulations; (4) whether the claimant is able to return to past relevant work, despite the impairment; and if not (5) whether the claimant can perform any other kind of work.  20 C. F. R. §§416.920 and 404.1520.   *See Cox v. Barnhart*, 345 F. 3d 606 , 608 n. 1 (8th Cir. 2003).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset date. (Tr.21).  He found that Plaintiff has a history of treatment for degenerative disc disease, mood disorders, and residuals from a motor vehicle accident with above the knee amputation. (Tr. 21).  He determined that Plaintiff suffers from a severe impairment but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 21).

The ALJ evaluated Plaintiff's subjective allegations and complaints pursuant to the criteria set forth in *Polaski v. Heckler*, 739  F. 2d 1320 (8th Cir. 1984).[2]  He concluded that Plaintiff's subjective allegations are not borne out by the overall record or are not fully credible to the extent alleged. (Tr. 25).   The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work prior to June 1, 2004.[3]   She has no past relevant work.  Therefore, at step five, based on the Medical-Vocational Guidelines (grids) and the evidence, the ALJ found that Plaintiff was not disabled prior to June 1, 2004.  (Tr. 25).

---

[2]These include the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.  *Polaski v. Heckler*, 739 F. 2d 1320, 1322 (8th Cir. 1984).

[3]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C. F. R. § 404.1567(b).

IV.

Plaintiff raises a number of arguments in her assertion that the Commissioner's decision is not supported by substantial evidence.

She first contends that the ALJ's finding that she does not have a severe mental impairment is not supported by substantial evidence. The record is replete with records from Mid-South Health Systems, showing that Plaintiff has been receiving counseling and medical management for depression and anxiety since November, 2001. The ALJ recognized that Plaintiff had been treated for depression and anxiety, and that she was seen by a therapist at the local mental health center and received psychotropic medication. He found, however, that Plaintiff had not been hospitalized for mental reasons, that her daily activities were not restricted due to emotional causes, and that there was no significant deficit in her ability to function socially. The ALJ, perhaps erroneously, stated that the record did not show any episodes of deterioration or decompensation in work settings. (Tr. 22). As Plaintiff points out, she has not worked since 1981.

Nevertheless, the records do not establish a severe impairment. Much of Plaintiff's treatment was for problems arising from an abusive marital situation, relationships with her children, and the death of her father. Her depression and anxiety subsided once she had removed herself from her stressful and abusive situation with her husband. (Tr. 627). Her depression and anxiety are controlled by medication. Her major depressive order is described as mild. (Tr. 594) In Physician's Certifications of Adult with Serious Mental Illness dated February 13, 2003 and May 22, 2003, Dr. Hashmi, Plaintiff's psychiatrist, noted that Plaintiff during the last year "[l]acked any legitimate productive role." (Tr. 541, 552). He did not find that Plaintiff had difficulties that substantiality interfered with basic

-6-

daily living skills, instrumental living skills or that limited her functioning in the vocational context.

Thus, the Court finds that there is substantial evidence in the record to support the ALJ's finding that Plaintiff's depression and anxiety are not severe impairments.

Second, Plaintiff contends that the ALJ erred by failing to complete a Psychiatric Review Technique Form (PRTF) as required by the regulations.  Defendant notes that the regulations no longer require an ALJ to complete the PRTF.   20 C. F. R. §§ 404.1520a(e)(2), 415.920a(e)(2); 65 Fed. Reg. 50,774 *et seq.* (August 21, 2000).  *See Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 285 (3rd Cir. 2006).  While the PRTF is not required, the findings of the PRTF should be documented within the ALJ's written decision. *See Jumping Eagle v. Barnhart*, 2006 WL 858972, *4 (D. S .D Mar. 27, 2006).  Here, the ALJ reviewed the record regarding Plaintiff's mental impairment and found that it did not affect the four different functional areas, those being, activities of daily living; social functioning; concentration, persistent or pace; and episodes of decompensation. Thus, the Court finds no error in the ALJ's failure to complete the PRTF.

Third, Plaintiff asserts that the ALJ's determination that Plaintiff's subjective allegations were not fully credible is not supported by substantial evidence.  The ALJ recognized that Plaintiff did suffer from limitations as a result of her degenerative disc disease and resulting back and neck pain.  However, he found that no physician had declared Plaintiff disabled or unable to perform light work activity.  He also noted that Plaintiff was able to perform daily activities such as household chores.

The Court cannot find that the ALJ's finding regarding Plaintiff's subjective complaints is not supported by substantial evidence.  The objective medical evidence establishes that

although Plaintiff suffered from some degenerative changes in her spine, her condition was mild.  According to a  CT scan of the cervical spine conducted on June 28, 2004, Plaintiff had mild degenerative discoverterbral disease C-5 through C-7, but otherwise a normal cervical spine.  (Tr. 720).

Her physician treated Plaintiff's back pain with medication.  He did not refer her to a specialist for further evaluation and more sophisticated or invasive treatment.

Plaintiff complained of headaches and seizures yet the medical evidence did not support her complaints.  A CT scan of the head reported normal findings.  (Tr. 788).  A later CT scan showed no seizure disorder. (Tr. 741)

Plaintiff's testimony that she slept all day almost every day does not comport with the objective evidence which shows that Plaintiff regularly went to therapy or doctors' appointments.  The therapy records do not indicate that Plaintiff was exhibiting discomfort or suffering from pain during any of the sessions.  Furthermore, Plaintiff reported that she was able to perform a number of household chores, such as laundry, shopping, changing sheets, driving, cooking and grocery shopping.  (Tr. 436-438).

The ALJ did not err in finding that Plaintiff's subjective complaints of pain were not fully credible.   *See Lawrence v. Chater*, 107 F. 3d 674, 676 (8th Cir. 1997) (medical evidence and level of plaintiff's daily activities contradict plaintiff's testimony regarding severity of her pain and disability).

Plaintiff also contends that the ALJ failed to discuss her mental impairments in his credibility analysis.  As discussed above, the ALJ did consider her mental impairments and found that her ability to perform light work activity was not limited by her depression and anxiety.

Fourth, Plaintiff contends that the ALJ improperly relied on the grids because of her significant nonexertional impairments.  Because Plaintiff had no past relevant work, the burden shifted to the Commissioner to show that Plaintiff retained the RFC to perform a significant number of other jobs in the national economy that are consistent with her impairments and vocational factors such as age, education, and work experience.  *Frankl v. Shalala*, 47 F. 3d 935, 937 (8th Cir. 1995).  If a claimant's impairments are exertional, that is affecting the ability to perform physical labor, then the Commissioner may carry his burden by referring to grids, "which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with different degrees of exertional impairment."  *Beckley v. Apfel*, 152 F. 3d 1056, 1059 (8th Cir. 1988).  However, where a claimant's ability to perform a full range of work is limited by a nonexertional impairment, such as pain or mental impairments, the ALJ cannot rely exclusively on the grids but must consider vocational expert testimony to determine disability.  *Id.*

Nonetheless, where a claimant's nonexertional limitations do not affect her RFC, the ALJ may rely on the grids to direct a finding as to disability without resorting to vocational expert testimony.  Furthermore, the ALJ may use the grids  "even  though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines."  *Thompson v. Brown*, 850 F. 2d 346, 349-50 (8th Cir. 1988).

Here, the ALJ found that Plaintiff was 49 years of age at the time of her alleged onset date, that she had a tenth grade education and no past work, and that she could perform

light work.  (Tr. 25).  Using these factors, the ALJ applied grid rules 202.10 and 202.17, which directed a finding of not disabled.  *See* 20 C. F. R. Pt. 303, Subpt. P, App. 2, §§ 202.10, 202.17.

The ALJ determined that Plaintiff's mental impairments were not severe.  He found that Plaintiff's complaints of pain were not fully credible. The Court has decided that these findings of the ALJ are supported by substantial evidence.  The evidence does not establish that Plaintiff's ability to perform a full range of work is limited by any nonexertional impairment.  Thus, it was appropriate for the ALJ to rely on the grid to reach the conclusion that Plaintiff was not disabled.  *McGeorge v. Barnhart*, 321 F. 3d 766, 769 (8th Cir. 2003) (reliance on grid appropriate even though nonexertional impairment where evidence supports finding that nonexertional impairment did not diminish claimant's RFC to perform full range of activities).

V.

In sum, the ALJ properly concluded that Plaintiff was not disabled within the meaning of the Act prior to June 1, 2004.

Accordingly, the Commissioner's administrative decision is affirmed.

IT IS SO ORDERED this 27th  day of July, 2007.


_____
UNITED STATES DISTRICT JUDGE